UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CAPE JASMINE COURT TRUST, | Case No. 2:13-cv-1125-APG-CWH |
| Plaintiff, | |
| v. | **ORDER REGARDING MOTIONS TO DISMISS** |
| CENTRAL MORTGAGE COMPANY; MTC FINANCIAL, INC. DBA TRUSTEE CORPS; EVELYN DAVID, RACHEL RIVERA, AND MARIA PABLICO, | (Dkt. ##12, 14) |
| Defendants. | |

Plaintiff Cape Jasmine Court Trust ("Cape Jasmine") purchased the property at issue in this case after SBH Community 3 ("HOA") foreclosed on its lien against the property. Cape Jasmine contends that the foreclosure extinguished a first position deed of trust lien held by defendant Central Mortgage Company ("CMC") because the HOA's lien enjoyed a "super priority" over CMC's deed of trust under NRS 116.3116(2). CMC has moved to dismiss Cape Jasmine's Complaint, arguing that the statute creates only a payment priority for the HOA lien but does not upset the "first in time" lien priority afforded to its deed of trust. [Dkt. #14.] Because the plain language of the statute creates a super priority for the HOA's lien, not just for payment, the motion must be denied.

Defendant MTC Financial Inc. dba Trustee Corps ("MTC") has moved to dismiss Cape Jasmine's claims against it because MTC claims no estate or interest in the subject property. [Dkt. #12.] Because MTC claims no interest in the property, it is entitled to dismissal.

I. **BACKGROUND**

On November 23, 2005, the HOA recorded Covenants Conditions and Restrictions ("CC&Rs") that encumber the real property that is the subject of this lawsuit (the "Property"). [Dkt. #14-3.] The Property was previously owned by Evelyn Davis, Rachel Rivera, and Maria

Pablico (collectively, "Borrowers"), who borrowed money from First National Bank of Arizona for the purchase. That mortgage loan was secured by a Deed of Trust ("DOT") encumbering the Property. In April 2012, all beneficial interest in the DOT was transferred to CMC. In January 2013, defendant MTC substituted in as Trustee under the DOT.

Because the HOA had recorded the CC&Rs before the DOT was recorded, both CMC and First National Bank of Arizona had actual or constructive knowledge of the CC&Rs at the time they obtained their respective interests in the DOT.

In February 2010, the HOA recorded a Notice Lien against the Property. The assessments purportedly included common expenses due during the nine months immediately preceding recordation of the lien (the "super-priority assessments"). On March 14, 2011, a Notice of Default and Election to Sell was recorded. CMC failed to cure any amount of the HOA lien. The HOA foreclosed on its lien, and Jumping Jacks Avenue Trust purchased the Property at the May 25, 2012 foreclosure sale. Cape Jasmine purchased the Property from Jumping Jacks Avenue Trust on June 18, 2012.

On February 25, 2013, MTC recorded a "Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust," threatening to foreclose upon the Property under CMC's DOT. Cape Jasmine contends that CMC's DOT was extinguished by the HOA foreclosure, under NRS 116.3116. Thus, Cape Jasmine seeks a declaration from this Court that it is the rightful owner of the Property free and clear of any liens, claims or encumbrances from the defendants. CMC now moves to dismiss Cape Jasmine's Complaint with prejudice, arguing that Cape Jasmine's claim to priority is based on an improper reading of NRS Chapter 116. [Dkt. #14.] MTC moves to dismiss because it claims no estate or interest in the subject Property, and thus should not be a party to this quiet title action. [Dkt. #12.]

## II. DISCUSSION

### A. CMC's Motion to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, the court accepts the facts alleged in

the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotations and citing references omitted).

Here, the legal dispute is whether an HOA lien foreclosure conducted under Nevada Revised Statutes Chapter 116 extinguishes all junior liens (including a first-position Deed of Trust), or whether the statute creates merely a payment priority without changing the lien priority. Cape Jasmine argues for the former interpretation while CMC insists the latter interpretation is correct.

The Nevada Supreme Court has not addressed the statutory provisions at issue here. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted). "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions."[1] *Id.* (quotation omitted).

The Court also looks to Nevada rules of statutory construction to determine the meaning of a Nevada statute. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). Under Nevada law, a court should construe a statute to give effect to the legislature's intent. *Richardson Constr., Inc. v. Clark Cnty. Sch. Dist.*, 156 P.3d 21, 23 (Nev. 2007). If the statute's plain language is unambiguous, that language controls. *Id.* If the statute's language is ambiguous, the Court "must examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature's intent." *Id.*

NRS Chapter 116, Nevada's version of the Uniform Common-Interest Ownership Act, sets forth the statutory framework for common interest communities such as HOAs. Nev. Rev. Stat. § 116.001; A.B. 221, Summary of Legislation, 66th Leg. (Nev. 1991). Section 116.3116(1)

---

[1] The Court is particularly persuaded by the reasoning of the Honorable Jerome Tao, Eighth Judicial District Court of Clark County, Nevada, in *First 100, LLC v. Ronald Burns, et al.*, No. A677693 (8th Jud. D. Nev. Dept. XX, May 31, 2013), and by the Honorable Philip Pro, District of Nevada, in *7912 Limbwood Court Trust v. Wells Fargo Bank, N.A., et al.*, No. 2:13-cv-506-PMP-GWF (D. Nev. Oct. 28, 2013).

3

allows the HOA to record a lien "for any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due." Recording the HOA's declaration of CC&Rs "constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required." *Id.* at § 116.3116(5). Additionally, unless the CC&Rs provide otherwise, "any penalties, fees, charges, late charges, fines and interest charged pursuant to [§ 116.3102(1)(j)-(n)] are enforceable as assessments under this section." Nev. Rev. Stat. § 116.3116(1); *see also* § 116.3102(1)(j)-(n) (providing for charges for such items as late payment penalties, rental fees for common elements, and fines).

Section 116.3116(2) elevates the priority of the HOA lien over other liens. The HOA lien is prior to all other liens on the property *except*:

> (a) Liens and encumbrances recorded before the recordation of the declaration[2] and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;
>
> (b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . . ; and
>
> (c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

Thus, a first deed of trust has priority over an HOA lien under § 116.3116(2)(b). However, the last paragraph of § 116.3116(2) gives what is commonly referred to as "super priority" status to a portion of the HOA's lien, making that portion superior to the first deed of trust:

> The [HOA] lien *is also prior to all security interests described in paragraph (b) to the extent of* any charges incurred by the association on a unit pursuant to NRS 116.310312[3] and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the nine months immediately preceding institution of

---

[2] The declaration is "any instrument[], however denominated, that create[s] a common-interest community, including any amendments to th[at] instrument[]." Nev. Rev. Stat. § 116.037.

[3] Allowing for the HOA's executive board to enter a unit to conduct maintenance or remove or abate a nuisance, and permitting the imposition of fees and costs for any such activity.

4

> an action to enforce the lien, unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien. . . . This subsection does not affect the priority of mechanics' or materialmens' liens, or the priority of liens for other assessments made by the association.

*Id.* at § 116.3116(2) (emphasis added).

To recover unpaid assessments, the HOA may pursue a civil suit directly against the unit owner, or it may foreclose on its lien created under § 116.3116. *Id.* at §§ 116.3116(6), (10), 116.31162. Should the HOA choose to conduct a foreclosure sale to collect on its lien, the HOA must comply with certain notice requirements. First, the HOA must notify the owner of the delinquent assessments. *Id.* at § 116.31162(1)(a). If the owner does not pay within 30 days, the HOA must record a notice of default and election to sell. *Id.* at § 116.31162(1)(b). In addition to recording the notice of default, the HOA must mail the notice of default to: (1) a person of interest, i.e. "any person who has or claims any right, title or interest in, or lien or charge upon," who "has requested notice," (2) "[a]ny holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest," and (3) "[a] purchaser of the unit," providing that the unit owner notified the HOA of the contract of sale 30 days prior to the recording of the notice of default. *Id.* at §§ 116.31163(1-3), 107.090(1). If the unit owner does not pay the lien amount within 90 days of the notice of default being recorded, the HOA then must give notice of the sale to the owner and to all known holders of a security interest who have "notified the association, before the mailing of the notice of sale, of the existence of the security interest." *Id.* at §§116.311635(b)(2), 116.31162(1)(c).

At the sale, the HOA may credit bid on the property "up to the amount of the unpaid assessments and any permitted costs, fees and expenses incident to the enforcement of its lien." *Id.* at § 116.31164(2). After the sale, the seller must execute and deliver to the buyer "a deed without warranty which conveys to the grantee all title of the unit's owner to the unit." *Id.* at §§ 116.31164(3)(a), 116.31166(3). The seller must apply the proceeds of the sale in the following order:

> (1) The reasonable expenses of sale;
>
> (2) The reasonable expenses of securing possession before sale, holding, maintaining, and preparing the unit for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, and, to the extent provided for by the declaration, reasonable attorney's fees and other legal expenses incurred by the association;
>
> (3) Satisfaction of the association's lien;
>
> (4) Satisfaction in the order of priority of any subordinate claim of record; and
>
> (5) Remittance of any excess to the unit's owner.

*Id.* at § 116.31164(3)(c). "The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption." *Id.* at § 116.31166(3). A deed containing the proper recitals "is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons." *Id.* at § 116.31166(2).

Based on the unambiguous language of section 116.3116(2), the statute potentially separates the HOA's lien into two liens. The last paragraph of subsection 2 elevates to a super priority position the last nine months of unpaid assessments and any unpaid nuisance abatement costs. The remainder of the HOA's lien, including any charges not contained within the super priority portion of the lien, is relegated to a position junior to the first deed of trust. *Id.* at § 116.3116(2)(b). The parties generally agree the statute bifurcates the HOA lien into two separate liens, but they disagree whether the HOA's foreclosure on the super priority portion of the lien extinguishes all other liens. In other words, does NRS § 116.3116(2) create a lien priority or merely a payment priority?

Nevada's statutory scheme is clear. Section 116.3116(2) unambiguously provides that the HOA super priority lien is prior to the first deed of trust. The statute also unambiguously permits the HOA to use non-judicial foreclosure procedures to enforce its lien. The statute sets forth the order of priority by which the seller must distribute the foreclosure sale proceeds, and specifically provides that the association's lien must be satisfied before any other subordinate claim of record. The statute also provides that the purchaser at an HOA foreclosure sale obtains the unit owner's

title without equity or right of redemption, and a deed which contains the proper recitals "is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons." *Id.* at § 116.31166(2). *Compare* Nev. Rev. Stat. § 107.080 (providing that a mortgage foreclosure sale "vests in the purchaser the title of the grantor and any successors in interest without equity or right of redemption"); *Bryant v. Carson River Lumbering Co.*, 3 Nev. 313, 317-18 (1867) (providing that such a sale "without equity or right of redemption" vests in the purchaser "absolute legal title as complete, perfect and indefeasible as can exist or be acquired by purchase; and a sale, upon due notice to the mortgagor, whether at public or private sale, forecloses all equity of redemption as completely as a decree of court"). Consequently, a foreclosure sale on the HOA super priority lien extinguishes all junior interests, including the first deed of trust.

CMC's argument that Chapter 116 creates merely a payment priority and cannot extinguish a deed of trust is untenable. Even if these statutory provisions do not explicitly provide that foreclosure of the HOA super priority lien extinguishes the first deed of trust, § 116.1108 provides that general principles of law and equity "supplement the provisions of this chapter, except to the extent inconsistent with this chapter." Under well-settled foreclosure principles, the foreclosure of a superior lien extinguishes all junior security interests. *Aladdin Heating Corp. v. Trustees of Central States*, 563 P.2d 82, 86 (Nev. 1977); *Erickson Constr. Co. v. Nev. Nat'l Bank*, 513 P.2d 1236, 1238 (Nev. 1973). Junior lienholders wanting to avoid this result can preserve their security interests by buying out the senior lienholder's interest. *See Carrillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980).

This result is consistent with the Legislature's statutory purpose of the super priority lien to "ensure prompt and efficient enforcement of the association's lien for unpaid assessments." Uniform Common Interest Ownership Act § 3-116, cmt. 1 (1982); *see also* Nev. Rev. Stat. § 116.1109(2) ("This chapter must be applied and construed so as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."). The Nevada Legislature presumably was aware of the normal operation of foreclosure law when

it enacted Chapter 116 in 1991. If the Legislature intended a different rule to apply to an HOA foreclosure sale, it could have so indicated.

CMC cites to various state and federal district court decisions holding that the statute creates a payment priority rather than a lien priority, contrary to those decisions cited in footnote 1 above. Although judges in the Nevada state trial courts and judges in this federal district court are divided on the question, guidance from other Nevada sources confirms the Court's conclusion about the meaning of this statutory scheme. The Nevada Real Estate Division of the Department of Business and Industry ("NRED") has interpreted this statute to mean that foreclosure on the HOA super priority lien results in extinguishment of all junior liens, including the first deed of trust. [Dkt. #1-8, Ex. 11 at 1.] According to the NRED, the "ramifications of the super priority lien are significant in light of the fact that superior liens, when foreclosed, remove all junior liens. An association can foreclose its super priority lien and the first security interest holder will either pay the super priority lien amount or lose its security." [*Id.* at 9.] In its conclusion, the NRED stated that the "association can use the super priority lien to force the first security interest holder to pay that amount." [*Id.* at 19.] The HOA retains a junior lien for other charges and penalties; if the first lienholder pays off the super-priority lien amount, it may foreclose on its lien and extinguish the HOA's junior lien for items not afforded super-priority status under the statute. [*Id.*]

The NRED is the entity charged with interpreting Chapter 116. *State, Dep't of Bus. & Indus., Fin. Insts. Div. v. Nev. Ass'n Servs., Inc.*, 294 P.3d 1223, 1227-28 (Nev. 2012); *see also* Nev. Rev. Stat. §§ 116.043, 116.615, 116.623. The Nevada Supreme Court therefore would defer to the NRED's interpretation so long as that interpretation is within the statute's language. *Dutchess Bus. Servs., Inc. v. Nev. State Bd. of Pharmacy*, 191 P.3d 1159, 1165 (Nev. 2008); *Folio v. Briggs*, 656 P.2d 842, 844 (Nev. 1983) (the Nevada Supreme Court "attach[es] substantial weight" to the interpretation of a state agency "clothed with the power to construe the statutes under which it operates").

Finally, CMC argues that the Court's interpretation of the statute leads to unreasonable results because an HOA lien of relatively little value should not be able to extinguish a first deed of trust of considerable value. The plain and unambiguous statutory language (not the relative monetary values of the respective liens) controls. Moreover, this interpretation of the statute is neither novel nor unfair. CMC easily could have avoided this purportedly inequitable consequence by paying off the HOA super priority lien amount to preserve its priority position, thereby avoiding extinguishment of its lien. Alternatively, CMC could have required an escrow for HOA assessments so that in the event of default, CMC could have satisfied the super priority lien amount without having to expend any of its own funds. *See* Uniform Common Interest Ownership Act § 3-116, cmt. 1 (1982); *see also* NRS § 116.3116(3). The HOA lien foreclosure extinguished only CMC's security interest in the property, not the underlying debt. *Olson v. Iacometti*, 533 P.2d 1360, 1363 (Nev. 1975) ("Foreclosure of the first trust deed extinguished only the security for the . . . note, not the indebtedness represented by that note."). CMC still can pursue the Borrowers for the unpaid balance. The Court's interpretation of the plain language of the statute does not create the inequitable result of which CMC complains.

### B. MTC's Motion to Dismiss

Cape Jasmine's Complaint seeks a declaration under NRS 40.010 that none of the defendants has any right, title, interest or claim to the Property. Defendant MTC argues that it should be dismissed from this case because it does not have and does not claim any interest in the Property. NRS §40.010 states that "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." Because MTC claims no estate or interest in the Property whatsoever, it should not be a party to this lawsuit.

////

////

////

////

### III. CONCLUSION

IT IS THEREFORE ORDERED that CMC's Motion to Dismiss [Dkt. #14] is DENIED.

IT IS FURTHER ORDERED that MTC's Motion to Dismiss [Dkt. #12] is GRANTED.

DATED THIS 31st day of March 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

10